IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ALBERT L. MITCHNER,

                    Plaintiff,

          v.                         CASE NO.  07-3173-SAC

WARDEN JAY SHELTON,
et al.,

                    Defendants.

MEMORANDUM AND ORDER

     This civil rights complaint was filed pursuant to 42 U.S.C. §
1983 by a state prison inmate while he was confined at the Norton
Correctional Facility, Norton, Kansas (NCF).  The court entered an
Order assessing an initial partial filing fee of $5.00, which
plaintiff has paid[1].  The court also screened the complaint and
found it subject to being dismissed for reasons stated in its
screening order (Doc. 4).  Mr. Mitchner was given time to show cause
why this action should not be dismissed.  He has since submitted a
document with numerous attachments, which he entitled "Civil Right
Complaint" (Doc. 6), and notices of address changes indicating he
was released from state prison.


APPLICATION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

     The court finds that because plaintiff submitted the initial
partial filing fee as ordered, his Application to Proceed in forma
pauperis (Doc. 2) is granted.  He remains obligated to pay what
remains of the full filing fee of $350.00.

_____

     [1]     Court records indicate that no further payments have been received
pursuant to 28 U.S.C. § 1915(b)(1).

**FACTUAL BACKGROUND**

From plaintiff's pleadings and exhibits, the facts upon which he bases his complaint appear to be as follows. Plaintiff was convicted in the District Court of Douglas County, Kansas, of "attempted rape: sex intercourse with a child less than 14" and sentenced in February, 2002, to 72 months in prison. In May, 2002, he was confined at the Hutchinson Correctional Facility, Hutchinson, Kansas (HCF) for service of his sentence.

Mr. Mitchner was initially required to participate in the Sex Offender Treatment Program (SOTP) at HCF; however, he was removed from the program because he asserted he could not be "coerced" to admit guilt in SOTP classes. He claimed he was not guilty of his offense, and his criminal appeal was still pending. In September, 2004, plaintiff was moved to the Lansing Correctional Facility, Lansing, Kansas (LCF). A couple weeks later he was moved to NCF, which was farther from his family than either HCF or LCF. Plaintiff requested transfers to be closer to family, and filed grievances complaining of his transfer to NCF. At NCF, plaintiff was again placed in the SOTP program, but was removed from that program in March, 2005. His exhibits indicate his removal was generally "for disciplinary/poor performance reasons."

Plaintiff's "incentive level" dropped due to his refusal to participate in his recommended programs. He filed grievances seeking a change from Incentive Level 1, but his classification was found to be correct and he was told he "must demonstrate a willingness to participate in recommended programs for 120 consecutive days before (he would) be allowed advancement in (his) incentive level." He sought and was denied reinstatement to the

SOTP program; but was placed on a waiting list.

Mr. Mitchner had several health problems throughout his incarceration that required medical attention, and continues to have health problems.

At times, plaintiff's balance in his inmate account met the criteria in prison regulations for him to receive a monthly indigent packet, and other times it did not.  He was found not to meet that criteria in January and February, 2007, when he requested free copies of his "appeal brief" to submit to the Kansas Supreme Court[2]. Plaintiff filed a motion for extension of time to file a Petition for Review, but does not provide a copy of that motion or summarize the grounds.  It was denied.

Plaintiff filed inmate requests to staff, inmate grievances, and administrative appeals on the issues he raises in this complaint.

Plaintiff was released on parole on June 19, 2007.


**PLAINTIFF'S RESPONSE**

Rather than filing a response to this court's prior order to show cause and addressing the deficiencies in his original complaint, plaintiff filed a document entitled "Civil Right Complaint" with over a hundred pages of attachments.  These documents were reasonably docketed by the clerk as an "Amended Complaint" and attachments.  In his second complaint, plaintiff

---

[2]      This action was not his direct criminal appeal, and was not a challenge to his state conviction.  Instead, it was a state collateral action attacking the execution of his sentence on some of the same grounds he raises in this federal complaint.

names four defendants, who are not the defendants in his original complaint. He also presents additional claims or allegations, and does not refer to every claim raised in his original complaint.

An Amended Complaint completely supercedes and takes the place of any prior complaint, so that the prior complaint is no longer considered. Since plaintiff continues to argue some of his prior claims, it does not appear that he intended for his second complaint to completely supercede his original complaint. In an attempt to very liberally construe the pleadings filed by this pro se litigant, the court has treated plaintiff's second complaint (Doc. 6) and attached exhibits as a supplement, rather than an amendment, to his original complaint. Document 6[3] is also considered as a motion to amend to add those additional defendants and claims found only in the second complaint. Having considered all materials filed by plaintiff, the court finds as follows.

**CLAIMS**

In its initial screening order (Doc. 4), this court summarized the "grounds" raised by plaintiff in his original complaint as: (1) plaintiff was coerced into participating in and wrongfully terminated from the SOTP; (2) he was unconstitutionally transferred while he was under doctors' care for serious medical conditions and subject to medical restrictions; and (3) his efforts to exhaust administrative remedies were impeded in order to block his access to the courts. The court also discussed plaintiff's allegations that he was wrongfully terminated from the GED program at HCF; that

--------

[3]   For simplicity's sake, this document is referred to herein as plaintiff's "second complaint."

defendant Brungardt wrongfully caused him to lose good-time credit;
and that defendants violated state statutes and regulations.

In his second complaint, plaintiff moves to add "Mrs. Aumiller"
as a defendant, and alleges she is "a food service supervisor" who
works at HCF for a company called "Air-Mark." He also moves to add
"Nargis Naheed, an employee of Correct Care Solutions at NCF, as a
defendant and the claim that due to this defendant's alleged lack of
care plaintiff contracted pneumonia and was hospitalized. He also
moves to add as defendant a dentist, name unknown, who was employed
by Correct Care Solutions at HCF, and the claim that this defendant
negligently performed a root canal on plaintiff. He also moves to
add as defendant "Dr. Albert" and the claim that this doctor started
to work on his "toe-nail problem" at the same time he was having
other serious health problems. Plaintiff also attempts to add a
claim that he was approved for release to the "Mirror Facility in
Topeka" but was released to another facility instead, which he
states is "not a good place to be housed."

While attachments to a complaint may generally be treated as
part of the complaint, plaintiff states in his second complaint that
its attachments were sent "to prove" his complaint. Thus, the court
does not parse plaintiff's numerous attachments and attempt to
construe all claims therein as additional claims. Instead, the
court has fully reviewed all attachments as documents proffered in
support of the claims raised in the texts of plaintiff's complaints.


**GED PROGRAM CLAIM**

In its initial screening order, the court found plaintiff had

not named as a defendant the person who ordered his termination from the GED program at HCF and had not alleged crucial facts including dates[4]. The court also held that decisions regarding placement and removal from prison rehabilitation programs are within the discretion of prison officials, and do not require a prior disciplinary hearing. Plaintiff has moved to name additional persons as defendants, but not the person at HCF who ordered his termination from the GED program.

Nor has plaintiff provided any additional facts in his second complaint indicating that his constitutional rights were violated by his removal from the GED program. Moreover, it appears this administrative decision took place long before June, 2005, making it time-barred under the applicable two-year statute of limitations. Plaintiff has provided no facts or arguments in his second complaint to show why his time-barred claims for money damages should not be dismissed. The court concludes this claim must be dismissed for failure to state facts that support a federal constitutional violation and as time-barred.


**SOTP CLAIMS**

The court also concludes that plaintiff's allegations regarding his termination from the SOTP program must be dismissed. In its prior order, the court found plaintiff's allegations in support, accepted as true, failed to state a federal constitutional claim because no statement he made in connection with the SOTP program was

_____

[4]      Plaintiff's "Program Classification Review" exhibit attached to Doc. 6 indicates he entered the GED program on January 14, 2003 and was terminated on September 9, 2004 because he "reached maximum benefits."

actually used to incriminate him in criminal proceedings, and he had not alleged facts or authority to support a claim of denial of due process[5].  In the text of his second complaint, plaintiff alleges no additional facts or arguments showing this claim should not be dismissed for the reasons stated in the court's initial screening order.

Plaintiff also claimed in his original complaint in very conclusory fashion that he was denied equal protection of the law when he was terminated from SOTP because other inmates were allowed to attend and finish their programs.  This bald statement was facially insufficient to support a denial of equal protection claim.  No additional supporting facts are stated in the second complaint.  Plaintiff's additional exhibits indicate he previously asserted a denial of equal protection claim in inmate grievances and state court.  For example, in his exhibited "Appellant's Brief," Supplement (Doc. 6), Attach. 2[6], plaintiff claimed unfair treatment, but also stated he has a learning disability and needed a program for slow learners.  In his additional exhibits of grievances, plaintiff actually named some inmates and claimed they received more

_____

    [5]    Plaintiff has not numbered any of his attachments.  He attached two exhibits to his original complaint (Doc. 1).  The first is his pro se "Petition for Review," submitted to the Kansas Supreme Court in <u>Mitchner v. Shelton</u>, Appellate Case No. 95467 (hereinafter "Petition for Review").  In this state court pleading, Mitchner indicated he was terminated from the SOTP when he attempted to invoke his Fifth Amendment rights rather than admit guilt in SOTP classes while his criminal appeal was still pending.  Another of plaintiff's exhibits indicates that on April 18, 2005, he generally complained to prison officials that he was wrongfully terminated from the SOTP.

    [6]    This document was filed in plaintiff's appeal (Kansas Appellate Court Case No. 95467) of the decision of the Norton County District Court denying his state habeas petition in Dist. Ct. Case No. 05-CV-31.  In this action, Mr. Mitchner delineated the issues as (1) wrongful termination from SOTP and GED programs, (2) forced to sign program contract in violation of Fifth Amendment, and (3) unconstitutional transfers from one prison facility to another.  This document will hereinafter be referred to as "Appellant's Brief."

favorable treatment by being allowed to complete the SOTP program
and assigned to a prison near their families.   However, the
statements and facts plaintiff presents to this court are not
sufficient to show he was similarly situated to any of the inmates
named in his exhibits.   None was alleged to have invoked his Fifth
Amendment privilege in SOTP classes, had his criminal appeal still
pending, had learning disabilities, or had the same release date as
plaintiff.

In his "Appellant's Brief," plaintiff objected that the SOTP
program at NCF was conducted in the medium custody unit, rather than
the minimum custody unit, as it had been at HCF[7], which caused him
to walk a long distance and be around more dangerous inmates.
Obviously, no federal constitutional claim is presented by these
facts alone, and no resulting harm has been described.

An exhibit attached to the second complaint indicates plaintiff
was "removed from SOTP for disciplinary/poor performance reasons on
3/23/05."  Plaintiff alleged in his original complaint that he was
terminated by Mrs. Medlock, his SOTP Facilitator, and that she put
in her discharge summary that he should not be allowed back into the
SOTP until his "criminal appeal was over."  He does not provide the
date his criminal appeal was final, and these facts taken as true
state no claim.  In an exhibited Inmate Request dated September 12,
2005, plaintiff asked to be reassigned to the SOTP program.  The
administrative response was that he would not be reassigned at that
time, there was a staff shortage, and inmates were assigned

---

[7]     Plaintiff also clearly argued in state court that he lost his
incentive level "causing him to be under paid." However, plaintiff had no federal
constitutional right to a particular incentive or pay level while serving a prison
sentence.

according to their release dates.  Plaintiff filed a grievance on his failure to progress through levels, which is undated but was responded to in November, 2005.

The court finds that none of the fact allegations regarding the SOTP program in plaintiff's complaints or exhibits are sufficient to support a claim that his removal from the SOTP was a violation of his federal constitutional rights.  In any event, his removals from the SOTP occurred more than two years prior to the filing of this federal complaint[8], and plaintiff's claim for money damages based on these administrative actions is time-barred.

**INTERFERENCE WITH ADMINISTRATIVE REMEDIES CLAIMS**

In its prior screening order, the court found plaintiff's allegations in his original complaint that his attempts to file administrative grievances were blocked were "conclusory and insufficient to assess liability for money damages against the named defendants."  Plaintiff has failed to present additional facts or describe unconstitutional acts by any named defendant(s) in support of this claim.  His general allegations still fail to suggest that his federal constitutional rights were violated during a particular administrative grievance process.  Most significantly, as fully discussed next, plaintiff still fails to allege facts showing that any difficulty he encountered in exhausting administrative grievances actually resulted in the violation of his federal constitutional right of access to the courts.  Plaintiff had no independent constitutional right to a prison grievance procedure.

---

[8]    Plaintiff's original complaint filed herein was executed in June, 2007.

Instead, his right was of access to the courts.

## DENIAL OF ACCESS TO THE COURTS CLAIM

In its prior screening order, the court found "plaintiff generally claims KDOC staff had attempted to block his access to the courts." The court further found plaintiff "did not allege sufficient facts to state a denial of access claim," mainly because he failed to allege any actual injury such as an impediment to a court action. In his original complaint plaintiff blamed KDOC employees for his failure in 2005 to timely file his state habeas petition in Norton County District Court. In his exhibits, he also blamed them for his failure in 2007 to timely file his Petition for Review in the Kansas Supreme Court.

With respect to plaintiff's failure to timely file his petition in state district court, the court finds as follows. On July 25, 2005[9], plaintiff filed a petition pursuant to K.S.A. § 60-1501 in Norton County District Court complaining about his removal from programs and prison transfers, as well as alleged coercion to participate in the SOTP program. The trial court found he had failed to file his petition within the applicable time limit and to show he exhausted administrative remedies. He was ordered to correct these deficiencies or his case would be summarily dismissed. Mitchner responded by filing an amended petition "elaborating on his claim" and attaching exhibits of letters and grievances, after which

---

[9]    Information regarding plaintiff's 1501 proceedings in state court has been pieced together mainly from his exhibits. He appealed the district court's denial of his 1501 petition to the Kansas Court of Appeals (KCOA). Four pages of the KCOA's five-page, unpublished opinion dismissing the appeal are the second attachment to plaintiff's original complaint herein (Doc. 1, Attach. 2).

the district court ordered summary dismissal.  Mitchner appealed to
the KCOA.   The KCOA gave him "the benefit of the doubt" on the
question of whether he had exhausted administrative remedies[10].
However, they also found Mitchner was required by statute to file
his § 1501 petition in the district court within thirty days of the
final administrative ruling by the Secretary of Corrections; that
said ruling had been made and received by Mitchner on June 6, 2005;
and that he had not filed his 1501 petition until July 27, 2005,
which "clearly was beyond the 30-day period in which he was required
to file his petition."  Based on these findings, the KCOA held that
the lower court had not erred in dismissing Mitchner's 1501 petition
for lack of jurisdiction.   They further concluded that, given the
procedural deficiencies, they did "not have jurisdiction to consider
Mitchner's appeal."  The appeal was dismissed in January, 2007.

The court finds from the foregoing, and for the reasons already
stated in its prior screening order, that plaintiff has not alleged
sufficient facts indicating the acts or inactions of any named
defendant(s) actually prevented him from filing his 60-1501 petition
in state district court within the thirty-day time limit set by
statute.   In his original complaint, Mr. Mitchner stated one reason
his "filing in the Norton County District Court" was untimely was
that the NCF was remodeling the legal library and legal materials
were not available at times.   Despite being given the opportunity,
he still fails to describe what legal materials he needed from the
prison library or what legal documents were misplaced while he was

---

[10]   The KCOA also noted Mitchner had "timely appealed," but failed to
address the issues decided upon by the district court and "merely argue(d) the
merits of his complaint."

11

in the hospital in 2004[11].   Nor has he explained how a lack of specific legal materials or documents prevented him from timely filing his 1501 petition.

Plaintiff has mainly argued that "KDOC staffs" blocked his attempts to exhaust administrative remedies in order to deny him access to the courts.   However, the conclusory allegations by plaintiff regarding his many grievances do not show that a particular named defendant effectively blocked any particular grievance.   Plaintiff's apparent belief that he was delayed in submitting his 60-1501 petition to the district court by a lack of final administrative response, is plainly contradicted by the KCOA's finding that Mr. Mitchner received a response from the Secretary of Corrections on June 6, 2005, and the time limit for filing his petition ran from the date of that response.

This court further finds that, even if plaintiff could now prove that a named defendant or defendants actually prevented him from timely filing his 60-1501 petition in Norton County by blocking his administrative grievances or otherwise, his claim for money damages based upon this alleged denial of access to the courts is time-barred because the alleged underlying events took place over two years prior to the filing of this § 1983 action.

Plaintiff also claims he was prevented from filing his "Grievance Petition" in the Norton County District Court on time,

---

[11]   Mitchner submitted his "Petition for Review" to the state appellate court despite its prior denial of his motion for an extension of time in which to file.   Therein, he stated that his grievance documents had been packed and stored during his seven-day stay in the hospital in April 2004, and that he was trying to process his grievance during this time.   He argued these were exceptional circumstances that should excuse his "being late in filing (his) grievance in the District Court."   He also alleged they included his lacking knowledge of how to file, and having been denied "proper access to the legal library."

due to misinformation from a unit team counselor, Mrs. Thompson[12].
Thompson's advice is not shown to have prevented Mitchner from
submitting his 60-1501 petition to the district court.  Moreover,
this misinformation was received in 2004[13], and thus is time-barred
as a basis for plaintiff's money damages claims herein.

The court finds as follows with respect to plaintiff's failure
in 2007 to timely file his "Petition for Review" in the Kansas
Supreme Court.  Plaintiff does not even allege in the text of either
his first or second complaint that he was prevented by defendants
from filing his Petition for Review on time.  Even if plaintiff's
exhibits could be liberally construed as suggesting such a claim,
denial of court access is not shown.  On-line records of the Kansas
Appellate Courts in Case No. 95467 show the unpublished opinion of
the KCOA dismissing Mitchner's appeal was filed on January 26, 2007.
Those records also show that Mitchner filed in the Kansas Supreme
Court a "MOTION/FOR EOT TO FILE PET REV" on February 23, 2007, which
was denied on February 26, 2007[14].  Plaintiff's exhibits suggest he
believes he was prevented from timely filing his Petition for Review
in 2007 because his request for free copies was denied[15].   He

---

[12]     Plaintiff alleged Thompson advised him to address his complaints, that
he was having problems getting his grievances answered, to the Governor, so he
sent a letter to the Governor, whose office re-routed his complaint to the
Secretary of Corrections.  The court found in its prior screening order that no
constitutional claim was presented by these allegations, and plaintiff had not
even named Mrs. Thompson as a defendant.  He does he seek to add her as a
defendant in his second complaint.

[13]     See Complaint (Doc. 1), Attach. 1 at 6.

[14]     As noted, he nevertheless mailed his Petition for Review to the Clerk
of the Appellate Courts.  It was postmarked March 2, 2007.  Plaintiff includes an
exhibit showing he was notified by a deputy clerk that since his motion for
extension of time had been denied, "No further documents may be filed in this
matter."

[15]     In his exhibited "Petition for Review," he stated that his being
indigent "played a big role" in his "not getting proper access to the court."

exhibits with his second complaint his "Inmate Request to Staff Member" Brungardt dated February 5, 2007, asking for free copying of his "court review brief," which was denied on the basis that Mitchner was not indigent at the time the request was made[16]. He was directed to purchase a copy card at the canteen. He also exhibits an Inmate Request dated February 7, 2007, to Mr. Hrabe in which he disagreed with the finding that he was not indigent, and alternatively asked for extra time in the library to type copies. Mr. Hrabe's response to this request is not exhibited.

The court finds that no constitutional denial of access is shown by a prison official's decision to deny free copy service to an inmate determined not to be indigent. Plaintiff does not provide any facts or documents indicating that either defendant Brungardt's or defendant Hrabe's findings and responses as to his indigent status were erroneous. Moreover, he states no reason why he was unable to produce and submit handwritten copies. Nor does he show that he timely requested some other accommodation from the Kansas Supreme Court, even though he alleges he was granted leave to proceed in forma pauperis on appeal. He does not even show that he advised the appellate court of his alleged inability to provide printed copies. In sum, even if the court construes the aforementioned exhibits as a claim herein by Mr. Mitchner that he

---

[16] Another exhibit attached to plaintiff's second complaint indicates he filed an undated grievance at NCF complaining that he "did not receive the proper assistance" from "administration staff, deputy warden Mr. Hrabe and unit team counselor V. Brungardt" and was prevented from getting his "Petition for Review Appeal case No. 95,467-A" to the Supreme Court in a timely manner, causing the appellate court to deny his Petition "for being 4 days late." He stated he had sent a form 9 to Hrabe asking to be allowed to make copies and pay later, or be allowed more time in the law library to produce copies. He claimed staff had caused his Petition to be denied, and asked for staff to help remedy the matter. The response to this grievance appears to be dated March 21, 2007.

was prevented from timely filing his Petition for Review, sufficient facts are not alleged showing the decisions regarding copying fees actually prevented him from submitting this document on time.  Nor does plaintiff show that this appeal was non-frivolous, as he must in order to state a claim of denial of access to the courts.

**INTERFERENCE WITH MEDICAL TREATMENT CLAIMS**

In its initial screening order, this court found plaintiff failed to state an Eighth Amendment claim of denial of medical treatment because he had not alleged that any named defendant acted with deliberate indifference to his serious medical needs, his allegations indicated he had received medical treatment and, even if treatment was interrupted during his transfers, he failed to allege that significant injury resulted.  Plaintiff does not allege any additional facts in his second complaint to cure these deficiencies. Nor do exhibits attached to plaintiff's second complaint provide sufficient facts to support his denial of medical treatment claims. In one such exhibit plaintiff mentions that along with his "tooth problem," and his "hart (sic) and blood pressure problem," he had an infected ingrown toenail.  He stated a doctor examined the toenail and made a couple appointments to remove it, which were not kept. This grievance was written in 2004.  Plaintiff also exhibits copies of written "temporary medical work restriction(s)" issued later in 2004 as a result of partial "toenail removal."  In addition, he exhibits several medical requests and "inmate request(s) to staff member" regarding medical complaints, which all indicate medication or some medical attention was provided.  In his "Petition for Review" attached to his original complaint, plaintiff stated he was

"having serious medical problems from the time he was transferred" from HCF until he entered NCF, and that he was transferred to NCF "before the doctors had a chance to help him with those serious health problems."   He also stated he had serious respiratory problems from January 2004, until March 23, 2004, that turned into double pneumonia for which he was hospitalized in April 2004.   The court finds that plaintiff has not only failed to allege sufficient additional facts in support of this claim, the few facts that can be garnered from his additional exhibits took place prior to June 2005. It follows that his claims for money damages based on any of the incidents described in his exhibits are time-barred.

**PRISON TRANSFERS CLAIMS**

Plaintiff alleged in his 60-1501 petition that KDOC unconstitutionally transferred him from prison to prison, and the transfers put his "life in serious danger."   His exhibits of "Program Classification Review(s)" and on-line KDOC offender records (KASPER) confirm that Mr. Mitchner was initially committed in April, 2002, to the El Dorado Correctional Facility in El Dorado, Kansas; and was transferred to HCF in May, 2002, to LCF[17] in September, 2004, and from LCF to NCF In October, 2004.   Plaintiff alleged in his 60-1501 petition that these transfers interfered with his medical treatment, program participation, ability to pursue grievances and court actions, and being near his family.   He argued then and argues

_____

[17]   On page 9 of his exhibited "Brief of Appellant" filed in Case No. 95467, plaintiff stated that after he was at HCF for over two years, he "put in for a transfer" to LCF, which was approved.   He stated he should have been left at HCF to complete his programs, if not transferred to LCF.   He also suggested that he was moved from HCF because he had attained minimum custody status.

now that other inmates received more favorable treatment with regard to their programs and locations.

Plaintiff claimed in his original complaint that his inter-prison transfers interfered with his necessary medical treatment. In it's screening order, the court found that plaintiff had not alleged facts to support a claim of denial of medical treatment. In his second complaint plaintiff adds allegations that he was required to work as a porter after his transfer to NCF while he was waiting for an operation on his foot, and that his attempts to appeal grievances were impeded. In an attached grievance from 2004, he sought transfer to LCF to be closer to his family. He also alleges he was having health problems during his transfer to NCF. However, plaintiff's main concern seems to be that he was "approved for a transfer to" LCF, where he could be closer to his family, but ended up at NCF.

The court finds that the additional allegations made by plaintiff are not sufficient to support a claim of denial of medical treatment. Certainly the fact that plaintiff was transferred while receiving medical treatment or on medical restrictions, without more, does not state such a claim. Moreover, decisions as to where to house a state prison inmate are within the discretion of KDOC officials, and complaints regarding inter-prison transfers state no federal constitutional claim.

The court additionally finds that plaintiff's conclusory allegation that where he is living since his release from prison is "not a good place to be housed," utterly fails to state a federal constitutional violation.

**LOSS OF GOOD TIME CREDIT CLAIMS**

In the court's prior screening order, it found plaintiff generally alleged defendant Brungardt "caused" him to lose good time credit, which in turn caused him to remain in prison longer. The court found these claims were conclusory, as plaintiff had not alleged facts such as how much credit he lost and when it was forfeited or denied[18]. The court further held that claims of entitlement to additional sentence credit, like claims that an inmate is being held beyond his release date, must be raised in a habeas corpus petition challenging the State's execution of sentence, rather than in a civil rights complaint. The court also noted that full exhaustion of state court remedies is a prerequisite to filing a § 2241 petition in federal court, and plaintiff had not alleged facts showing exhaustion. Plaintiff does not allege any additional facts with respect to good time credit in his second complaint. Nor has he made any attempt to show he fully exhausted state court remedies on this particular claim.

In addition, the court finds any claim that plaintiff is entitled to money damages for allegedly illegal confinement, is premature under Heck v. Humphrey, 512 U.S. 477, 487 (1994). In Heck, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 suit based on a claim of illegal confinement, "the complaint must be dismissed unless the plaintiff

---

[18]     Plaintiff attaches a few exhibits to his second complaint regarding good time credit. One, entitled "Program Classification Review" and dated April 13, 2005, indicates plaintiff was "not awarded 100% of his good time due to being taken out of SOTP." Other exhibits indicate he continued "to have good time withheld for his removal from SOTP for disciplinary/poor performance," was on a wait list for SOTP, and the Unit Team "denied any good time to be restored per KAR 44-6-115."

can demonstrate that the conviction or sentence has already been invalidated." In short, plaintiff is barred from filing a money damages claim prior to his having actually obtained habeas corpus relief on his claim that he was entitled to more sentence credit and earlier release.

## MOTION TO ADD "MRS. AUMILLER" AS DEFENDANT

The court finds plaintiff's motion to add "Mrs. Aumiller" as a defendant should be denied. Plaintiff does not describe any acts or inactions by Mrs. Aumiller in the body of his second complaint. In his original complaint, he alleged he had filed a grievance against the "Air-Mark Supervisor" for age discrimination. He attaches as an exhibit to his second complaint a grievance which he filed complaining that "Mrs. Allmellar" removed him as a cook in the kitchen at HCF. However, plaintiff was removed from this work assignment in 2002. As was explained in the court's screening order, claims that arose prior to two years before the filing of the instant complaint are barred by the statute of limitations.

## MOTION TO ADD UNNAMED DENTIST AS DEFENDANT

Plaintiff alleged in his original complaint that he had filed a grievance against a dentist for negligent tooth extraction. As noted, in his second complaint he seeks to add an unnamed dentist who was employed by Correct Care Solutions at HCF as defendant, and a claim against this dentist. Plaintiff attaches to his second complaint a grievance in which he claimed that this dentist filled one of his teeth without first taking an x-ray, and the tooth still hurt. Plaintiff further claimed that he returned to the dentist,

19

who then attempted to pull the same tooth, but it was difficult and very painful, and the tooth was broken off in his mouth.  He asked in his grievance to see another dentist to have the remaining part of his tooth removed and for pain relief[19].  Even if plaintiff's allegations regarding this dental treatment were found to state more than a claim of negligence, he would be entitled to no relief.  Like the court indicated in its prior screening order and herein with respect to several other of plaintiff's claims, this claim is time-barred because this dental treatment occurred in March and April of 2004, which is more than two years prior to the filing of the instant complaint.

**SUMMARY**

For all the foregoing reasons, and for the reasons stated in the court's prior order dated July 30, 2007, the court finds plaintiff has failed to state facts in support of a federal constitutional claim, and as a consequence this action must be dismissed and all relief denied.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Leave to Proceed in forma pauperis (Doc. 2) is granted.

**IT IS FURTHER ORDERED that** plaintiff's pleading initially docketed as his Amended Complaint herein (Doc. 6) is hereby construed as a Supplement to his original complaint and a motion to add parties and claims; that his request imbedded at the end of his

_____

[19]    In response to this grievance the Health Services Administrator reviewed plaintiff's medical record and found Mr. Mitchner was given Ibupropen for discomfort after his #12 tooth was "restored;" a couple weeks later his #13 tooth was extracted due to an abscess and a portion of a root tip remained, but the socket was healing satisfactorily and an x-ray showed no abnormalities.

Supplement (Doc. 6) that he be provided with an attorney is denied as moot; and that his motion to add additional defendants and claims in his Supplement (Doc. 6) is denied.

**IT IS FURTHER ORDERED** this action is dismissed for failure to state facts in support of a federal constitutional claim, and all relief is denied.

**IT IS SO ORDERED**.

Dated this 26th day of January, 2008, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge